Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA THILL and JELENA WOEHR, each individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>VEGO INNOVATIONS, INC.,<br><br>*Defendant*. | Case No. 4:26-cv-7940<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**Table of Contents**

I.    Introduction. ........................................................................................................... 1

II.   Parties. .................................................................................................................... 5

III.  Jurisdiction and Venue. .......................................................................................... 6

IV.   Facts. ...................................................................................................................... 6

    A.    Defendant's fake prices and fake discounts. ................................................. 6

    B.    Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts. ........................................................................................................ 18

    C.    Defendant's advertisements are unfair, deceptive, and unlawful. .............. 22

    D.    Defendant's advertisements harm consumers. ............................................ 23

    E.    Plaintiffs were misled by Defendant's misrepresentations. ....................... 24

    F.    Defendant breached its contract with and warranties to Plaintiffs and the putative class. ............................................................................................. 27

V.    Class action allegations. ....................................................................................... 29

VI.   Claims. .................................................................................................................. 30

    First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq. ..................................................................... 30

    Second Cause of Action: Violation of California's Consumers Legal Remedies Act ............. 32

    Third Cause of Action: Violation of California's Unfair Competition Law ........................... 34

    Fourth Cause of Action: Breach of Contract ........................................................... 37

    Fifth Cause of Action: Breach of Express Warranty ................................................ 38

    Sixth Cause of Action: Quasi-Contract/Unjust Enrichment .................................... 39

    Seventh Cause of Action: Negligent Misrepresentation ......................................... 39

    Eighth Cause of Action: Intentional Misrepresentation ........................................ 40

VII.  Relief. ................................................................................................................... 41

VIII. Demand for Jury Trial. ......................................................................................... 42

## I.    Introduction.

1.    Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.    Moreover, Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.    In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6.    Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

7.    As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8.    Defendant Vego Innovations, Inc., formerly known as Vego Garden, Inc. ("Defendant" or "Vego Garden"), manufactures, sells, and markets Vego Garden-branded gardening products, including raised garden beds, planters, greenhouses, watering systems, composting products, gardening tools, soils, and accessories ("Vego Garden Products") online through its website, www.vegogarden.com.

9.    On its website, Defendant lists purported regular prices and purported limited-time sales offering steep discounts from those regular prices. For example, Defendant consistently advertises a constant stream of rotating promotions purportedly linked to specific holidays or events. Defendant claims that its Products are "on sale" and that consumers can save "up to X% off" when they purchase during the advertised promotion. Here are some examples:

SPRING SALE: UP TO 30% OFF

SPRING SALE: UP TO 30% OFF

APRIL BLOOMS SALE: UP TO 40% OFF

MOTHER'S DAY SALE: UP TO 30% OFF

MEMORIAL DAY SALE: UP TO 40% OFF

MEMORIAL DAY SALE EXTENSION: UP TO 40% OFF

INDEPENDENCE DAY SALE: UP TO 40% OFF

SUMMER SALES: UP TO 30% OFF

Garden Makeover Sale: Up to 35% Off

Labor Day Extension Sale: Up to 40% Off

Black Friday Special Starts Now: Up to 50% Off

New Year Sale: Up to 30% Off

President�?s Day Sale: Up to 40% Off

Spring Sale: Up To 40% OFF

April Fool Spring Sale Extension: Up To 40% OFF

Earth Day Grow Your Own Food: Up To 25% OFF

Mother's Day Sale: Gift List for Mother Up to 25% Off

Memorial Day Sale: Up To 30% OFF

Father's Day Sale: Gift List for Father Up to 25% Off

Freedom to Grow Sale: Up To 30% OFF

Selected Products for Summer Up to 20%

Selected Products for School Up to 20%

Midnight Harvest Halloween Sale: Up to 30% Off

New Year Sale: Up to 40% Off

10. Defendant also attempts to add a sense of urgency by adding a timer that counts down the hours, minutes, and seconds remaining in the promotion so the customer will buy now:

Labor Day Extension Sale Ends in   06 : 11 : 30   HRS MIN SEC   Labor Day Extension Sale: Up to 40% Off

Black Friday Special Sale Ends In   68 : 15 : 23   HRS MIN SEC   Black Friday Special Starts Now: Up to 50% Off

Flash Sale Ends in   14 : 32 : 18   HRS MIN SEC

11. But in reality, the deals do not end when they are advertised to. Instead, they are simply replaced with a different, but substantially similar, new sale. Indeed, far from being time-limited, the advertised discounts on Defendant's Products are routinely available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are routinely available for less than them. The purported discounts Defendant advertises are not the true discounts a customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are consistently available.

12. As described in greater detail below, after reviewing Defendant's website, www.vegogarden.com, and seeing and relying on an advertised sale, Plaintiff Jelena Woehr bought

Class Action Complaint                    4                    Case No. 4:26-cv-7940

one 17-Inch Tall 9 in 1 Large Modular Metal Raised Garden Bed Kit, one 17-Inch Tall 9 in 1 Large Novel Modular Metal Raised Garden Bed Kit, and one In-Ground Worm Composter twin pack from Defendant. And Plaintiff Vanessa Thill bought four 17-Inch Tall 9 in 1 Large Modular Metal Raised Garden Bed Kits from Defendant. When Ms. Woehr and Ms. Thill made their purchases, Defendant advertised that purported sales were going on, and Ms. Woehr and Ms. Thill believed that they were being offered steep discounts from the purported regular prices that Defendant advertised. And based on Defendant's representations, Ms. Woehr and Ms. Thill believed that they were purchasing Products whose regular prices and market values were the list prices that Defendant advertised, that they were receiving specific and substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs caused Ms. Woehr and Ms. Thill to buy from Defendant when they did.

13.    In truth, however, the representations Ms. Woehr and Ms. Thill relied on were not true. The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendant been truthful, Plaintiffs Woehr and Thill, and other consumers like them, would not have purchased the Products, or would have paid less for them.

14.    Plaintiffs bring this case for themselves and other California consumers who purchased Vego Garden Products.

**II.    Parties.**

15.    Plaintiff Vanessa Thill is domiciled in Berkeley, California.

16.    Plaintiff Jelena Woehr is domiciled in Santa Monica, California.

17.    The proposed class includes citizens of California.

18.    Defendant Vego Innovations, Inc., formerly known as Vego Garden, Inc. ("Defendant" or "Vego Garden"), is a Delaware corporation with its principal place of business at 13808 Boudreaux Road, Building No. 2, Tomball, Texas 77377. Defendant conducts business under the Vego Garden name and operates the consumer website www.vegogarden.com.

Class Action Complaint                 5                 Case No. 4:26-cv-7940

### III.    Jurisdiction and Venue.

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

20.    The Court has personal jurisdiction over Defendant because Defendant sold Vego Garden Products to consumers in California, including to Plaintiffs.

21.    Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Vego Garden Products to consumers (including Plaintiffs) in California and to consumers (including Plaintiff Thill) in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff Thill.

### IV.    Facts.

#### A.    Defendant's fake prices and fake discounts.

22.    Defendant manufactures, sells, and markets Vego Garden-branded gardening products, including raised garden beds, planters, greenhouses, watering systems, composting products, gardening tools, soils, and accessories online through its website, www.vegogarden.com.

23.    Through its advertisements, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

24.    At any given time, on its website, Defendant advertises steep discounts on its Products. These discounts routinely offer "up to $X off" the listed regular prices that Defendant advertises. Even though in truth these discounts run constantly, Defendant claims they are time-limited offers tied to specific events or holidays. Defendant changes the names of its various promotions but the discounts offered are consistently available. Defendant advertises its sales prominently on a banner across its website (among other places, as shown below). Here are some examples of these advertisements:

SPRING SALE: UP TO 30% OFF

SPRING SALE: UP TO 30% OFF

APRIL BLOOMS SALE: UP TO 40% OFF

MOTHER'S DAY SALE: UP TO 30% OFF

MEMORIAL DAY SALE: UP TO 40% OFF

MEMORIAL DAY SALE EXTENSION: UP TO 40% OFF

INDEPENDENCE DAY SALE: UP TO 40% OFF

SUMMER SALES: UP TO 30% OFF

Garden Makeover Sale: Up to 35% Off

Labor Day Extension Sale: Up to 40% Off

Black Friday Special Starts Now: Up to 50% Off

New Year Sale: Up to 30% Off

Selected Products for Summer Up to 20%

Black Friday Special Starts Now: Up to 50% Off

New Year Sale: Up to 30% Off

President�?s Day Sale: Up to 40% Off

Spring Sale: Up To 40% OFF

April Fool Spring Sale Extension: Up To 40% OFF

Earth Day Grow Your Own Food: Up To 25% OFF

Mother's Day Sale: Gift List for Mother Up to 25% Off

Memorial Day Sale: Up To 30% OFF

Father's Day Sale: Gift List for Father Up to 25% Off

Freedom to Grow Sale: Up To 30% OFF

Class Action Complaint                 7                 Case No. 4:26-cv-7940

25.    Defendant also advertises the promotions prominently on its homepage, including through banners advertising the sales, and by listing the purportedly discounted prices of its Products alongside the purported regular prices, shown in strikethrough font (e.g., "$~~209.95~~"). For example:



*Captured January 2, 2025*



*Captured February 18, 2025*

Class Action Complaint                    8                    Case No. 4:26-cv-7940



*Captured June 24, 2025*

*Captured February 6, 2025*

26.    And Defendant likewise advertises the promotions on Product category pages and individual Product pages, including through banners advertising the sales, and by listing the purportedly discounted prices of its Products alongside the purported regular prices, shown in strikethrough font (e.g., "~~$259.95~~"). Example screenshots are provided below:



*Product category page (captured July 17, 2026)*



*Product page (captured July 17, 2026)*

27.    Defendant represents that the advertised promotions are time-limited and tied to specific holidays or events, but in reality, they continue indefinitely. For example, on January 4, 2026, Defendant advertised a "New Year Sale" offering "UP TO 40% OFF" its Products. As an illustrative example, during this time, Defendant offered one of its best sellers, the Large Modular Metal Raised Garden Bed Kit for the purported discount price of "$179.95" marked down from the purported regular price of "$239.95" shown in strikethrough font.



*Captured January 4, 2026*

28.    To reasonable consumers, this advertising meant that the sale was tied to, and would end after, the New Year's holiday. In other words, reasonable consumers understood that the advertised discounts were available during the holiday period, and that soon after the holiday period ended, the discounts would be finished and consumers would have to pay the purported regular prices

to purchase the Products. But, in truth, Defendant's advertised sales do not end when the underlying event or holiday ends, and instead are replaced with the same, or materially similar, sales. For example, Defendant simply replaced the "New Year Sale" with a "Presidents Day Sale," offering materially similar discounts as the "New Year Sale." For example, as shown below, with its "Presidents Day Sale," Defendant continued to offer "Up to 40% Off." And Defendant continued to offer the Large Modular Metal Raised Garden Bed Kit at the same purported discount price ("$179.95") alongside the same purported regular price ("$239.95") shown in strikethrough font:



*Captured February 3, 2026*

29.    Similarly, after Presidents Day came and went, instead of Defendant's Products being sold at the listed regular prices, as reasonable consumers would expect, Defendant simply replaced the "Presidents Day Sale" with the "Presidents Day Sale Extension." And then it replaced the "Presidents Day Sale Extension" sale with the "Spring Sale." And then it replaced the "Spring Sale" with the "Spring Sale Extension." The promotions all offer materially the same discounts: "UP TO 40% OFF." And taking the same illustrative example, they all continued to offer the Large Modular Metal Raised Garden Bed Kit at a purported discount price shown alongside a purported regular price shown in strikethrough font:

Class Action Complaint                    12                    Case No. 4:26-cv-7940




*Captured February 21, 2026*



*Captured March 21, 2026*




*Captured April 2, 2026*

30.    Using these tactics, Defendant leads reasonable consumers to believe that Defendant's sales are only available for a limited time, but, as shown above, they continue

Class Action Complaint                    13                    Case No. 4:26-cv-7940

constantly, and are continuously replaced by similar sales. The list (or strikethrough) prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discounts a customer is receiving, and are often not a discount at all.

31.     To confirm that Defendant consistently offers discounts off purported regular prices, Plaintiffs' counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org)[1] to collect screen captures of the Home page and All Products page of Defendant's website. That investigation confirms that Defendant's sales have persisted continuously. For example, 128 screenshots of Defendant's website were captured from January 2024 through July 2026.

32.     Of the 128 screenshot captures of Defendant's website, all 128 (i.e., one hundred percent) displayed a purportedly time-limited discount on Defendant's Products. And one hundred percent of the screenshots that listed prices for Defendant's products displayed purported discounted prices alongside purported regular prices shown in strikethrough font in substantially the same manner as depicted above in paragraphs 25 through 29. Defendant's promotions run continuously, and its discounts are effectively permanent.

33.     Reasonable consumers do not realize the fake nature of the advertised sales. It is not apparent from merely purchasing the Products, because the sales appear to be bona fide sales. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required an extensive investigation and mining of internet archives, which revealed that the sales are not limited in time as advertised, that the discounts are fake, and that the advertised regular prices are fake.

34.     In addition to advertising "up to X% off," Defendant's website also lists fake regular prices (that is, prices reflecting the regular price that a given Product regularly sells for and the market value of that Product) and fake discounts throughout the purchasing process. For example, on

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/.

July 24, 2026, Defendant was running one of the promotions in its series of never-ending promotions: this time, a "Summer Sale" offering "UP TO 40% OFF." As it always does, the home page listed various Products beneath the promotion banner with fake regular prices shown in strikethrough font (e.g., "$239.95") alongside fake discount prices (e.g., $159.95"):



*Captured July 24, 2026*

35.     And when a customer selects a Product for purchase (as an example here, the "17" Tall 6 In 1 Medium Modular Metal Raised Garden Bed Kit"), the purchaser is led to the Product page, then the Cart page, and then the Checkout page, all of which show the fake regular price in strikethrough font ("$239.95") alongside a fake discount price:



*Product Page, captured July 24, 2026*



*Cart Page, captured July 24, 2026*



*Checkout Page, captured July 24, 2026[2]*

36.    Using the tactics described above, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during a temporary promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

37.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the prices at which the goods were sold on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly

---

[2] Note that an "EXTRA 10%" off was applied and shown in the Cart and Checkout pages based on yet another promotion.

temporary sale, and after the sale ends, consumers buying from Defendant on its website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

38.     Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and that they are receiving reductions from the regular prices in the amounts advertised. In truth, however, Defendant consistently offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices. And, the list prices do not represent the true market value for the Products, because Defendant's Products are routinely available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are constantly available.

**B.     Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.**

39.     As explained above, Defendant sells its Vego Garden Products through its website, www.vegogarden.com. Some Vego Garden Products are also available through third-party websites and retailers, including Amazon.com and Walmart.

40.      The Vego Garden Products available from third-party websites and retailers are sold by those websites and retailers for prices well below Defendant's listed regular prices. For example, on July 24, 2026, Vego Garden advertised its 32-Inch Extra Tall 6 in 1 Medium Modular Metal Raised Garden Bed Kit on its website with a purportedly discounted price of "$259.95" alongside a purported regular price of "$379.95" in strikethrough font (meaning consumers who purchased on this day would purportedly be saving "32% OFF"):

Class Action Complaint                          18                          Case No. 4:26-cv-7940



*Captured July 24, 2026*

41.    On the same day, the same Product was available on Amazon.com for $259.95—the same price as Defendant's purportedly discounted price, and far lower than the purported regular price that Defendant was advertising:



*Amazon, captured July 24, 2026*

Class Action Complaint                    19                    Case No. 4:26-cv-7940

42.    Plus, Amazon's "price history" shows that, in the three months prior to June 24, 2026, the Product was never sold for more than $259.95—meaning it never sold for Defendant's purported regular price, and in fact never sold for more than the purportedly discounted price advertised on Defendant's website:



*Amazon, captured July 24, 2026*

43.    This trend is true on other third-party websites, too. On the same day, the same Product was listed on Walmart.com and available on Home Depot for "$259.95," the same price shown on Amazon and the discount price on Defendant's website, and nowhere near the purported regular price ($379.95) on Defendant's website.



*Walmart, captured July 24, 2026*

Class Action Complaint                      20                      Case No. 4:26-cv-7940

*Home Depot, captured July 24, 2026*

44.     This trend is not limited to these specific Products. When Products are sold by third-parties like Amazon, Home Depot, or Walmart, they are routinely sold near or below the purported discount prices shown on Defendant's website, rather than Defendant's advertised regular prices. The chart below shows this for several Products identified as "Best Sellers" on Defendant's website:

| Product (Captured 7/24/26) | Vego Garden's Advertised Regular Price | Vego Garden's Advertised Sale Price | Amazon's Price | Home Depot's Price | Walmart's Price |
|---|---|---|---|---|---|
| 17-Inch Tall 9 In 1 Large Modular Metal Raised Garden Bed Kit | $259.95 | $179.95 | $179.95 | $179.95 | $179.95 |
| Elevated Garden Bed – 2' x 6' | $379.95 | $339.95 | $339.95 | $339.95 | Not available |
| 17-Inch Tall 10 In 1 Jumbo Modular Metal Raised Garden Bed Kit | $279.95 | $199.95 | $179.95 | $199.95 | Not available |

Class Action Complaint                              21                              Case No. 4:26-cv-7940

45.    In short, as the above shows, Defendant's Products are regularly available from third-party websites and sellers for less than the purported regular prices that Defendant's website advertises. This is not surprising, as prices charged on third-party websites and by third-party retailers typically converge on Defendant's prices, especially since the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

46.    Plus, Vego Garden primarily sells its Products directly to consumers. If consumers are searching for a Vego Garden Product, they will likely go to Defendant's website. For example, if a consumer Googles "Vego Garden garden bed," the first sponsored and unsponsored results lead to www.vegogarden.com. Thus, Vego Garden Products appear to be most commonly sold on Defendant's website. This means that they are most commonly sold for the discounted prices available on Defendant's website.

**C.    Defendant's advertisements are unfair, deceptive, and unlawful.**

47.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

48.    Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

49.    In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

50.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for

Class Action Complaint                    22                    Case No. 4:26-cv-7940

example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

51.   And finally, California's Unfair Competition Law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

52.   Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market prices in the three months immediately preceding the advertisements. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**D.   Defendant's advertisements harm consumers.**

53.   Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the market values of the Products.

54.   Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

55.   In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

56.   Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often

closes the deal, if they are wavering or are undecided on making a purchase."[3] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

57. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

58. Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. Moreover, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiffs and the class paid more for the Products they bought than they otherwise would have.

**E.    Plaintiffs were misled by Defendant's misrepresentations.**

59. On or around April 4, 2025, Plaintiff Woehr purchased one 17-Inch Tall 9 In 1 Large Novel Modular Metal Raised Garden Bed Kit, one 17-Inch Tall 9 In 1 Large Modular Metal Raised Garden Bed Kit, and an In-Ground Worm Composter twin pack from Defendant's website, www.vegogarden.com, while living in Santa Monica, California. At the time she made her purchase, Defendant's website advertised a substantial sale that impacted the price of the Products Ms. Woehr purchased. Each of the Products she purchased were listed on Defendant's website with purportedly discounted prices alongside the purported regular prices shown in strikethrough font in substantially the same format as displayed above in paragraphs 25 through 29. Both the 17-Inch Tall 9 In 1 Large Novel Modular Metal Raised Garden Bed Kit and the 17-Inch Tall 9 In 1 Large Modular Metal

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).
[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

Class Action Complaint                          24                          Case No. 4:26-cv-7940

Raised Garden Bed Kit had purported regular prices of $239.95 and purported discount prices of $169.96 and $169.95. And the In-Ground Worm Composter twin pack had a purported regular price of $119.95 and a purported discount price of $71.95. She also received a free Salad Serving Bowls Gift Box with her purchase. Here is Ms. Woehr's Order Confirmation:

60.     On or around December 17, 2025, Plaintiff Thill purchased four 17-Inch Tall 9 In 1 Large Modular Metal Raised Garden Bed Kits from Defendant's website, www.vegogarden.com, while living in Berkeley, California. At the time she made her purchase, Defendant's website advertised a substantial sale that impacted the price of the Products that Ms. Thill purchased. The Products she purchased were also listed on Defendant's website with a purportedly discounted price

Class Action Complaint                     25                     Case No. 4:26-cv-7940

($159.99) alongside the purported regular prices ($239.95) shown in strikethrough font in substantially the same format as displayed above in paragraphs 25 through 29.[6] Here is Ms. Thill's Order Confirmation:

**Order No. #VG 49305871679**

December 17, 2025

**Items ordered**

| | | | |
|---|---|---|---|
| | 17" Tall 9 In 1 Large Modular Metal Raised Garden Bed Kit<br>Olive Green<br>VB9N117G | x 3 | $479.97 |
| | 17" Tall 9 In 1 Large Modular Metal Raised Garden Bed Kit<br>Olive Green<br>VB9N117G | x 1 | $159.98 |
| | Shipping Protection by Route<br>$16.53<br>ROUTEINS | x 1 | $16.53 |

61.     Prior to making their purchases, Plaintiffs Woehr and Thill reviewed Defendant's website and saw that Defendant was advertising a substantial, time-limited promotion. Plaintiffs Woehr and Thill read and relied on the representations on Defendant's website, including that the Products had the regular prices listed on the website in strikethrough font, but were being offered at discounted sale prices from the regular prices, and that the sale was time-limited. Based on Defendant's representations described above, Plaintiffs reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products they were purchasing at the published regular price (shown in strikethrough font), that the regular price was the market value of the Products that they were buying, that they were receiving the advertised discount

_____

[6] Wayback screen captures show that Defendant consistently listed the Product that Ms. Thill purchased on its website with a purported regular price of $239.95 shown in strikethrough font both before and after Ms. Thill's purchase, including on December 7, 2025 and on December 22, 2025.

as compared to the regular price, that the advertised discount was only available for a limited time (during the temporary promotion), and that the Products would go back to retailing for the published regular prices when the promotion ended. They would not have made the purchase, at the prices they paid, if they had known that the Products were not discounted as advertised, and that they would not be receiving the advertised discount.

62.     In truth, as explained above, Vego Garden Products, including the Products that Plaintiffs purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Products that Plaintiffs purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited-time—Defendant's Products are regularly on sale.

63.     Plaintiffs face an imminent threat of future harm. They would purchase additional Vego Garden Products in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while they could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiffs are unable to rely on Defendant's advertising in the future, and so they cannot purchase Products that they would like to purchase.

**F.     Defendant breached its contract with and warranties to Plaintiffs and the putative class.**

64.     When Plaintiffs, and other members of the putative class, purchased and paid for the Vego Garden Products they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value (equal to the list price shown in strikethrough font), and to provide those Products with the discounts advertised on the website.

65.    Defendant's advertisements on its website list the market value of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiffs and the putative class.

66.    Defendant also warranted that the regular prices and market values of the Products Plaintiffs purchased were the advertised list prices and warranted that Plaintiffs were receiving a specific discount off of the Products' regular prices.

67.    The regular prices and market values of the items Plaintiffs and putative class members would receive, and the amount of the discounts they would be provided off the regular prices of those items, were specific and material terms of the contracts. They were also affirmations of fact about the Products and a promise relating to the goods.

68.    Plaintiffs and other members of the putative class performed their obligations under the contracts by paying for the items they purchased.

69.    Defendant breached its contracts by failing to provide Plaintiffs and other members of the putative class with Products that have a regular price and market value equal to the list price displayed, and by failing to provide the specific discounts it promised. Defendant also breached warranties for the same reasons.

**G.    No adequate remedy at law.**

70.    Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

71.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims. For example, Plaintiffs' FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims. As a second example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages. No such requirements exist to obtain

restitution. Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

72.    In addition, to obtain a full refund as damages, Plaintiffs must show that the Product they bought has essentially no market value. In contrast, Plaintiffs can seek restitution without making this showing. This is because Plaintiffs purchased Products that they would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

73.    Furthermore, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

74.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiffs face. Only an injunction can remedy this threat of future harm. Plaintiffs would purchase or consider purchasing Products from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiffs are unable to rely on Defendant's advertising in the future, and so cannot purchase Vego Garden Products they would like to purchase.

**V.    Class action allegations.**

75.    Plaintiffs bring the asserted claims on behalf of the proposed class (the "Class") of:

- All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Vego Garden Products advertised at a discount on Defendant's website.

76.    The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this

Class Action Complaint                             29                             Case No. 4:26-cv-7940

matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

77.    The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical. There are tens or hundreds of thousands of Class members.

78.    Class members can be identified through Defendant's sales records and public notice.

### *Predominance of Common Questions*

79.    There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiffs and the proposed Class.

### *Typicality & Adequacy*

80.    Plaintiffs' claims are typical of the proposed Class. Like the proposed Class, Plaintiffs purchased Vego Garden Products advertised at a discount from Defendant. There are no conflicts of interest between Plaintiffs and the Class.

### *Superiority*

81.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

**First Cause of Action:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.**

**(by Plaintiffs and the Class)**

82. Plaintiffs incorporate each and every factual allegation set forth above.

83. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

84. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

85. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and Class members.

86. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, $179.95) and displaying it next to a lower, discounted price. Reasonable consumers understand prices advertised in strikethrough font from which temporary discounts are calculated to denote "former" prices (i.e., the prices that Defendant charged before the discount went into effect.).

87. The list prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is consistently a heavily-advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are limited in time are false and misleading too.

88. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market prices within three months immediately preceding the advertising. As explained above, Defendant's advertised list prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisements. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

Class Action Complaint                    31                    Case No. 4:26-cv-7940

89. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when purchasing the Vego Garden Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

90. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Vego Garden Products).

91. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

92. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Vego Garden Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

93. For the claims under California's False Advertising Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

<u>**Second Cause of Action**</u>:

**Violation of California's Consumers Legal Remedies Act**

**(by Plaintiffs and the Class)**

94. Plaintiffs incorporate each and every factual allegation set forth above.

95. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

96. Plaintiffs and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

97. Plaintiffs and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

98. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

99. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices (i.e., prices that are not the regular or prevailing prices, and by advertising fake discounts).

100. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

101. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

102. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at the advertised discount.

103. And Defendant violated, and continues to violate, section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of its Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Presidents Day Sale," when in fact the sale is ongoing and not limited to Presidents Day).

104. Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

105.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Vego Garden Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

106.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Vego Garden Products).

107.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

108.    Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Vego Garden Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

109.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the Class, seek injunctive relief.

110.    CLRA § 1782 NOTICE. CLRA demand letters were sent to Defendant's headquarters and its registered agent on July 20, 2026 and July 22, 2026, via certified mail (return receipt requested). The letters provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiffs and for each member of the Class within 30 days of receipt, Plaintiffs and the Class will seek all monetary relief allowed under the CLRA.

111.    A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (by Plaintiffs and the Class)

112.    Plaintiffs incorporate each and every factual allegation set forth above.

113.    Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

114.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

115.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1, 16 C.F.R. § 233.2.

***The Deceptive Prong***

116.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

117.    Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

118.    Plaintiffs relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

119.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sales were limited in time, that the Products had specific regular prices, and that the customers were receiving specific discounts.

120.    Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

121.    The harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product.

This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

122. Plaintiffs and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

123. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

\* \* \*

124. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the Vego Garden Products. Defendant's representations were a substantial factor in Plaintiffs' purchase decision.

125. In addition, class-wide reliance can be inferred because Defendant's representations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy Vego Garden Products).

126. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class members.

127. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

128. For the claims under California's Unfair Competition Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(by Plaintiffs and the Class)**

129.    Plaintiffs incorporate each and every factual allegation set forth above.

130.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

131.    Plaintiffs and Class members entered into contracts with Defendant when they placed orders to purchase Defendant's Products.

132.    The contracts provided that Plaintiffs and Class members would pay Defendant for the Products purchased.

133.    The contracts further required that Defendant provide Plaintiffs and Class members with Products that have a market value equal to the advertised list prices displayed on the website. They also required that Defendant provide Plaintiffs and Class members with the discount advertised. These were specific and material terms of the contract.

134.    The specific discounts (off of Defendant's regular prices) were a specific and material term of each contract, and were displayed to Plaintiffs and Class members at the time they placed their orders.

135.    Plaintiffs and Class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

136.    Defendant breached its contracts with Plaintiffs and Class members by failing to provide Products that had a market value equal to the list price, and by failing to provide the promised discount off of the regular price. Vego Garden did not provide the discount that it had promised.

137.    Plaintiffs provided Defendant with notice of this breach of contract, by mailing notice letters to Defendant's headquarters and registered agent on July 20, 2026 and July 22, 2026.

138.    As a direct and proximate result of Defendant's breaches, Plaintiffs and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

139. For the breach of contract claims, Plaintiffs seek all damages available, including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the other Class members as a result of Defendant's unlawful conduct.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiffs and the Class)**

140. Plaintiffs incorporate each and every factual allegation set forth above.

141. Plaintiffs bring this cause of action on behalf of themselves and the Class.

142. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Vego Garden Products, issued material, written warranties by advertising that the Products had a market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

143. This warranty was part of the basis of the bargain and Plaintiffs and members of the Class relied on this warranty.

144. In fact, the Vego Garden Products' stated list prices were not the prevailing or market values. Thus, the warranty was breached.

145. Plaintiffs provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's headquarters and registered California agent, on July 20, 2026 and July 22, 2026.

146. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

147. For the breach of express warranty claims, Plaintiffs seek all damages available, including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the other Class members as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(by Plaintiffs and the Class)**

148.    Plaintiffs incorporate each and every factual allegation in paragraphs 1-63, 70-74 above.

149.    Plaintiffs bring this cause of action in the alternative to their Breach of Contract and Breach of Express Warranty claims (Counts Four and Five) on behalf of themselves and the Class.

150.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the Class to purchase Defendant's Products and to pay a price premium for these Products.

151.    In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

152.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiffs and other Class members are void or voidable.

153.    Plaintiffs and the Class seek restitution, and in the alternative, rescission.

154.    For the quasi-contract/unjust enrichment claims, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiffs and the Class)**

155.    Plaintiffs incorporate each and every factual allegation set forth above.

156.    Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

157.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and Class members concerning the existence and/or nature of the discounts and savings advertised.

158.    These representations were false.

Class Action Complaint                                         39                                    Case No. 4:26-cv-7940

159. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

160. Defendant intended that Plaintiffs and Class members rely on these representations and Plaintiffs and Class members read and reasonably relied on them.

161. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Vego Garden Products).

162. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class members.

163. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

164. For the negligent misrepresentation claims, Plaintiffs seek all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

<u>**Eighth Cause of Action:**</u>

**Intentional Misrepresentation**

**(by Plaintiffs and the Class)**

165. Plaintiffs incorporate each and every factual allegation set forth above.

166. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

167. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and Class members concerning the existence and/or nature of the discounts and savings advertised.

168. These representations were false.

Class Action Complaint                    40                    Case No. 4:26-cv-7940

169. When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

170. Defendant intended that Plaintiffs and Class members rely on these representations and Plaintiffs and Class members read and reasonably relied on them.

171. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Vego Garden Products).

172. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class members.

173. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

174. For the intentional misrepresentation claims, Plaintiffs seek all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

## VII. Relief.

175. Plaintiffs seek the following relief for themselves and the proposed Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed Class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII.    Demand for Jury Trial.

176.    Plaintiffs demand the right to a jury trial on all claims so triable.

Dated: July 30, 2026                                        Respectfully submitted,

                                                            By: */s/ Richard Lyon*

                                                            Richard Lyon (Cal. Bar No. 229288)
                                                            rick@dovel.com
                                                            Simon Franzini (Cal. Bar No. 287631)
                                                            simon@dovel.com
                                                            DOVEL & LUNER, LLP
                                                            201 Santa Monica Blvd., Suite 600
                                                            Santa Monica, California 90401
                                                            Telephone: (310) 656-7066
                                                            Facsimile: +1 (310) 656-7069

                                                            *Attorneys for Plaintiffs*